IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:24-cv-193

| | | |
|---|---|---|
| HILLARY PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SOFTSERVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## I.     INTRODUCTION

1. SoftServe, Inc. (the "Company") expressly revoked Plaintiff Hillary Porter's ("Hillary", "Ms. Porter" or "Plaintiff") employment offer when it learned she had a disability and that she would need a reasonable accommodation. The accommodation Ms. Porter requested was roughly six weeks to recover from a surgery later in the year.

2. Ms. Porter now turns to this Court to remedy the Company's illegal decision to revoke its employment offer and/or otherwise not employ Ms. Porter on the basis of her real or perceived disability and/or request for reasonable accommodations. Accordingly, Ms. Porter brings suit against the Company for violations of the Americans with Disabilities Act.

## II.     PARTIES, JURISDICTION, AND VENUE

3. Plaintiff resides in Durham County, North Carolina.

4. Defendant SoftServe, Inc.'s principal office is located at 12800 University Drive, Suite 410, Fort Myers, Florida 33907. Defendant has a significant presence in North Carolina.

5. Defendant's registered agent is located at 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27651.

6. If not for Defendant's illegal actions, Plaintiff would have worked for Defendant from home at 1020 Kent Street, Durham, North Carolina 27707.

7. A substantial portion of the acts or omissions giving rise to this lawsuit took place in Durham County, North Carolina.

8. Venue is proper in the District Court of North Carolina because: (a) Defendant's unlawful employment practices were committed in Durham County, North Carolina; (b) Plaintiff would have worked in Durham County, North Carolina but for Defendants' unlawful employment practices; (c) Defendant resides in Durham County, North Carolina because they are subject to the Court's personal jurisdiction there in light of the business it transacts in Durham County and elsewhere in North Carolina; and (d) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Durham County, North Carolina.

### III.    FACTUAL STATEMENT

9. In or around 2020, Ms. Porter suffered a life-threatening emergency and was in the hospital for ten days to recover. Since then, Ms. Porter has suffered from complications from that surgery and has been diagnosed with Meckel's diverticulum, Irritable Bowel Syndrome, a Small Intestinal Bacterial Overgrowth, an incisional hernia, and multiple small bowel obstruction.

10. At all times relevant to this case, Ms. Porter qualified as someone with a disability under the Americans with Disabilities Act.

11.   In or around April 2022, Ms. Porter applied for a Senior Marketing Specialist, Service, and Content Creator position with the Company.

12. On or around April 27, 2022, Company recruiter Olha Buzovska contacted Ms. Porter on LinkedIn about beginning the interview process.

13. On or around May 3, 2022, Ms. Porter had an initial 30-minute screening interview with Buzovska.

14. On or around May 5, 2022, Ms. Porter had a 90-minute interview with Company hiring manager and Director of Content Kawika Maszak.

15. On or around May 17, 2022, Ms. Porter had a third, 60-minute interview with Company Chief Marketing Officer Arturo Pena.

16. About halfway through this interview process, Ms. Porter found out she needed surgery in a few months to repair some issues from a previous surgery related to her disability.

17. On or around May 23, 2022, Ms. Porter had a final interview meeting with Company Senior HR Business Partner Jennifer Sperone, who offered Ms. Porter the position. Sperone gave Ms. Porter a verbal and written offer.

18. On or around May 25, 2022, Ms. Porter accepted the job offer with the Company via email. She said, "I would like to accept the offer you shared with me on May 23, 2022."

19. In the acceptance email. Ms. Porter disclosed she would need surgery "in a few months." Ms. Porter let the Company know this surgery would involve several weeks of leave for her recovery.

20. Ms. Porter assured the Company she was available to start on the Company's desired start date if she could later take the requested leave, which would amount to a reasonable accommodation under the ADA.

3

21. Specifically, Ms. Porter said, "We could proceed with the start date of June 20 in the offer and come up with a way to address the expected ~6 weeks of income during the medical leave."

22. Ms. Porter also, alternatively, offered to push back her start date with Company so she could take care of her disability-related needs before beginning her career with the Company.

23. Ms. Porter could not have been more clear that she could start on the Company's desired start date of June 20, 2022.

24. All Ms. Porter did was invite a conversation about her disability. She said, "Please let me know what you think."

25. Ms. Porter also related her condition and surgery to disability leave. She specifically asked about the Company's short-term and long-term disability policies.

26. In response, the Company revoked Ms. Porter's job offer.

27. The Company's revocation was directly in response to her disclosure of her disability and need for a reasonable accommodation.

28. The Company claimed it needed someone with full-time availability to start right away.

29. Specifically, Sperone, on behalf of the Company, said, ". . . [the Company] agrees that your disclosure is a 'complication' because you applied for a position that is an immediate need on the marketing team that relies on full-time availability now. As a result, [the Company] will unfortunately not be able to proceed and employ you at this time."

30. Within minutes, Ms. Porter tried calling Ms. Sperone to clarify that she could—as her email said—start work on the desired start date.

4

31. Ms. Sperone did not answer Ms. Porter's call.

32. After failing to reach Ms. Sperone, roughly thirty minutes after receiving the revocation email, Ms. Porter emailed Ms. Sperone and emphasized, in bold, that she does "**have full-time availability to start the job now and can begin on June 20 as outlined in the offer.**" (emphasis in original.)

33. In the same email, Ms. Porter continued, "I'm sure you're aware that it's illegal for a company to discriminate against a potential hire on the basis of a disability or health condition. I'm hoping we can proceed with our discussion. I have already expressed that I would like to accept [the Company's] offer, which I have in writing, and I don't want to have to bring in legal counsel here."

34. But the Company left Ms. Porter with no choice. The Company stood by its decision.

35. On or around November 7, 2022, Ms. Porter filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

36. The EEOC issued its Right to Sue letter on December 31, 2023.

### IV.     LEGAL CLAIMS

### Count I
### *(Violation of the Americans with Disabilities Act)*

37. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

38. Plaintiff was disabled in that her bowel blockage, Meckel's diverticulum, irritable bowel syndrome, another related conditions are physical impairments that substantially limited one or more major life activities, including lifting, working, and sleeping, among

5

others; her diagnoses also substantially limited major bodily functions of digestive system functions.

39. Plaintiff had a record or history of a substantially limiting impairment.

40. Defendant otherwise regarded Plaintiff as having a disability.

41. Plaintiff requested reasonable accommodations (leave of absence and time off related to her disability).

42. Plaintiff suffered an adverse employment action when Defendant revoked her employment offer on the basis of her real or perceived disability.

43. Plaintiff suffered an adverse employment action when Defendant revoked her employment offer in retaliation for requesting a reasonable accommodation.

44. Defendant failed to engage in the interactive process or to accommodate Plaintiff.

45. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

46. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

### JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

6

1. Enter a judgment against Defendant and order the Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.* and the Americans with Disabilities Act;

3. Award Plaintiff liquidated damages under 29 U.S.C. § 626(b);

4. Award Plaintiff liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii);

5. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

6. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

7. Grant Plaintiff a trial of this matter by a jury.

This the 7th day of March , 2024.

*/s/ Sean F. Herrmann*
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue Ste. 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

*Attorneys for Plaintiff*